No. 15-1456

## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

ACORDA THERAPEUTICS INC., AND
ALKERMES PHARMA IRELAND LIMITED,

*Plaintiffs-Appellees*,

– v. –

MYLAN PHARMACEUTICALS INC., AND
MYLAN INC.,

*Defendants-Appellants.*

Appeal from the United States District Court
for the District of Delaware,
The Honorable Leonard P. Stark, Chief Judge
No. 1:14-cv-935

## BRIEF OF
## THE CHAMBER OF COMMERCE OF THE UNITED STATES
## AS *AMICUS CURIAE* IN SUPPORT OF NEITHER PARTY

Kate Comerford Todd
U.S. CHAMBER LITIGATION
  CENTER, INC.
1615 H St., NW
Washington, DC 20062
Tel.: (202) 463-5337

Andrew J. Pincus
Paul W. Hughes
James F. Tierney
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
(202) 263-3000

May 26, 2015

*Counsel for* Amicus Curiae

# CERTIFICATE OF INTEREST

Counsel for Amicus Curiae The Chamber of Commerce of the United States of America, certifies the following:

1.    The full name(s) of every party or amicus represented by us are:

The Chamber of Commerce of the United States of America

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by us is:

Not applicable.

3.    All parent corporations and all publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by us are:

Not applicable. The Chamber of Commerce of the United States of America is a nonprofit corporation organized under the laws of the District of Columbia. It has no parent corporation. No publicly held corporation owns ten percent or more of its stock.

4.    The names of all law firms and the partners and associates that appeared for appellants in the trial court or are expected to appear in this Court are:

i

Mayer Brown LLP
Andrew J. Pincus
Paul W. Hughes
James F. Tierney

U.S. Chamber Litigation Center, Inc.
Kate Comerford Todd

Dated: May 26, 2015                    Respectfully submitted,


                                       /s/ Andrew J. Pincus
                                       Andrew J. Pincus
                                       MAYER BROWN LLP
                                       1999 K Street, NW
                                       Washington, DC 20006

# TABLE OF CONTENTS

Certificate of Interest ....................................................................... i

Table of Authorities ...................................................................... iv

Interest of the *Amicus Curiae* ...................................................... 1

Introduction and Summary of Argument ..................................... 3

Argument .......................................................................................... 5

    A State May Not Require A Foreign Corporation To Consent
    To General Personal Jurisdiction Before Permitting The
    Foreign Corporation To Do Business Within The State. ........................ 5

    A.  General Jurisdiction Based On Coerced Consent Would
        Produce The Very Unfairness And Other Adverse
        Consequences That The Supreme Court Sought To Prevent
        Through Its *Daimler* Ruling. ............................................................. 8

    B.  General Jurisdiction Based On Compelled Consent
        Violates Due Process. ...................................................................... 16

        1.  *Daimler* squarely rejected a "doing business" test for
            general personal jurisdiction. ..................................................... 17

        2.  Requiring a foreign corporation to consent to general
            jurisdiction to qualify to do business in the state
            violates the unconstitutional conditions doctrine. .................... 18

        3.  The Supreme Court's rulings in *International Shoe*
            and its progeny repudiated the Court's prior
            jurisdiction-by-implied consent decision. ................................. 21

Conclusion .................................................................................... 23

# TABLE OF AUTHORITIES

## CASES

*Acorda Therapeutics, Inc. v. Mylan Pharm. Inc.*,
2015 WL 186833 (D. Del. Jan. 14, 2015) ................................................. 2, 21

*Asahi Metal Indus. Co. v. Super. Ct. of Cal.*,
480 U.S. 102 (1987) ............................................................................. 12, 15

*AstraZeneca AB v. Mylan Pharm., Inc.*,
2014 WL 5778016 (D. Del. Nov. 5, 2014) ........................................................2

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ................................................................................. 8, 11

*Burnham v. Superior Ct. of California*,
495 U.S. 604 (1990) ................................................................................. 9, 22

*Connecticut v. Doehr*,
501 U.S. 1 (1991) .......................................................................................... 20

*Daimler AG v. Bauman*,
134 S. Ct. 746 (2014) ........................................................................*passim*

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
131 S. Ct. 2846 (2011) ............................................................................ 1, 16

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984) ........................................................................................3

*Hertz Corp. v. Friend*,
559 U.S. 77 (2010) ..........................................................................................9

*Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982) ...................................................................................... 23

*Int'l Shoe Co. of Washington*,
326 U.S. 310 (1945) ............................................................................ 4, 5, 22, 23

*J. McIntyre Machinery, Ltd. v. Nicastro*,
131 S. Ct. 2780 (2011) ............................................................................ 1, 11

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Japan Line, Ltd. v. Los Angeles Cnty.*,
  441 U.S. 434 (1979) ................................................................. 12

*Koontz v. St. Johns River Water Mgmt. Dist.*,
  133 S. Ct. 2586 (2013) ............................................................ 18

*McCulloch v. Sociedad Nacional de Marineros de Honduras*,
  372 U.S. 10 (1963) ................................................................... 13

*McGee v. International Life Insurance Co.*,
  355 U.S. 220 (1957) ................................................................. 22

*MeadWestvaco Corp.* v. *Ill. Dep't of Revenue*,
  553 U.S. 16 (2008) ................................................................... 20

*Morrison* v. *National Australia Bank Ltd.*,
  561 U.S. 247 (2010) ................................................................. 15

*National Equip. Rental, Ltd. v. Szukhent*,
  375 U.S. 311 (1964) ................................................................. 23

*Pennoyer v. Neff*,
  95 U.S. 714 (1877) ................................................................... 22

*Pennsylvania Fire Insurance Co. v. Gold Issue Mining & Milling Co.*,
  243 U.S. 93 (1917) .............................................................. 21, 22

*Perkins v. Benguet Consolidated Mining Co.*,
  342 U.S. 437 (1952) ................................................................... 7

*Shaffer v. Heitner*,
  433 U.S. 186 (1977) ................................................................. 23

*Southern Pac. Co. v. Denton*,
  146 U.S. 202 (1892) ............................................................ 18, 19

*Sternberg v. O'Neil*,
  550 A.2d 1105 (Del. 1988) ................................................... 7, 19

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
  552 U.S. 148 (2008) ................................................................. 15

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Tull v. United States,*
481 U.S. 412 (1987) .................................................................... 21

*Walden v. Fiore,*
134 S. Ct. 1115 (2014) ........................................................... 1, 15

*World-Wide Volkswagen Corp. v. Woodson,*
444 U.S. 286 (1980) ..................................................................9

**STATUTES, RULES AND REGULATIONS**

8 Del. Code § 371 ......................................................................... 19

Federal Rule of Appellate Procedure 29 .......................................1

Gen. Laws Tex. 1887 .................................................................... 19

**OTHER AUTHORITIES**

Brief for Chamber of Commerce of United States of America et al., in
Support of Petitioner, *Daimler,* 134 S. Ct. 746 (No. 11-965), 2013 WL
3421897 ............................................................................. 12, 13

Bureau of Economic Affairs, *Foreign Direct Investment in the United
States – Preliminary 2012 Data, available at* http://-
www.bea.gov/international/pdf/fdius_2012p/GroupITablesA1toA9.pd
f ......................................................................................... 14

Economic Affairs, *Foreign Direct Investment in the United States –
Preliminary 2012 Data, available at* http://-
www.bea.gov/international/pdf/fdius_2012p/GroupITablesA1toA9.pd
f ......................................................................................... 14

*Foreign Direct Investment in the United States* at 11 (Oct. 2013),
*available at* https://www.whitehouse.gov/sites/
default/files/2013fdi_report_-_final_for_-web.pdf; ...................... 13

Tanya J. Monestier, *Registration Statutes, General Jurisdiction, and
the Fallacy of Consent,*
36 Cardozo L. Rev. 1343 (2015)................................................. 19

# TABLE OF AUTHORITIES
## (continued)

Page(s)

Remarks by President Obama at the SelectUSA Investment Summit
(Mar. 23, 2015), *available at* https://www.whitehouse.gov/the-press-
office/2015-/03/23/remarks-president-selectusa-investment-summit........ 14

*Report on Legislation – A.6714 and S.4846* (Apr. 2015), *available at*
http://www2.nycbar.org/pdf/report/uploads/ 20072900-
OppositiontoBillto-ConsenttoJurisdictionby ForeignBusiness
OrganizationsAuthorizedtodoBusiness inNewYork.pdf............................ 10

Charles W. Rhodes, *Clarifying General Jurisdiction*, 34 Seton Hall L.
Rev. 807 (2004)........................................................................................... 12

Statement by President Obama on US Commitment to Open Invest-
ment Policy (June 20, 2011), *available at*
https://www.whitehouse.gov/the-press-office/2011/06/20/ statement-
president-united-states-commitment-open-investment-policy ............ 13, 14

## INTEREST OF THE *AMICUS CURIAE*

The Chamber of Commerce of the United States of America ("Chamber") is the world's largest business federation, representing 300,000 direct members and indirectly representing an underlying membership of more than three million U.S. businesses and professional organizations of every size and in every economic sector and geographic region of the country.[1]

One of the Chamber's most important responsibilities is to represent the interests of its members in matters before the courts, Congress, and the Executive Branch. To that end, the Chamber regularly files *amicus* briefs in cases that raise issues of vital concern to the nation's business community, including cases addressing the constitutional limits on courts' exercise of personal jurisdiction.[2]

---

[1]     In accordance with Federal Rule of Appellate Procedure 29(c)(5), *amicus* affirms that no counsel for a party authored this brief in whole or in part and that no person other than *amicus*, its members, or their counsel made a monetary contribution intended to fund the brief's preparation or submission. All parties have consented to the filing of this brief.

[2]     The other cases presenting issues regarding the due process limits on the scope of personal jurisdiction in which the Chamber has filed *amicus* briefs include *Walden v. Fiore*, 134 S. Ct. 1115 (2014); *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011); and *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011). The Chamber's most recent briefs in personal jurisdiction cases are available at http://www.chamberlitigation.com/cases/issue/jurisdiction-procedure/personal-jurisdiction.

1

Most Chamber members conduct business in states other than their states of incorporation and principal place of business. They therefore have a substantial interest in the rules governing whether, and to what extent, a nonresident corporation may be subjected to general personal jurisdiction in those other states.

The Supreme Court held in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), that—absent extremely unusual circumstances—a corporation is subject to general personal jurisdiction only in its state of incorporation and state of principal place of business. In the wake of *Daimler*, lower courts have reached conflicting conclusions regarding the constitutionality of state laws conditioning permission to do business within a state on a foreign corporation's consent to general jurisdiction within that state. *Compare AstraZeneca AB v. Mylan Pharm., Inc.*, 2014 WL 5778016 (D. Del. Nov. 5, 2014) (compelled registration does not provide constitutionally effective consent to general jurisdiction), *with Acorda Therapeutics, Inc. v. Mylan Pharm. Inc.*, 2015 WL 186833, at *8 (D. Del. Jan. 14, 2015) (upholding general jurisdiction based on "consent" based on legally-required registration).

Subjecting corporations to general jurisdiction in every state in which they could be required to register to do business would eviscerate

the due process protection recognized by the Court in *Daimler*—and could well have the practical result of exposing corporations that do business nationwide to general jurisdiction in all fifty states. *Amicus* files this brief to explain why that result is irreconcilable with the Supreme Court's personal jurisdiction decisions, will impose unfair burdens on businesses, permit forum-shopping undermining the credibility of the judicial system, and inflict significant harm on the nation's economy.

## INTRODUCTION AND SUMMARY OF ARGUMENT

This *amicus* brief addresses only one of the questions before the Court in this case: whether a state may condition permission for a foreign corporation to do business within its borders on the foreign corporation's agreement to subject itself to general personal jurisdiction in courts within the state. The answer to that question is "no."[3]

The Supreme Court has recognized "two categories of personal jurisdiction." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). Specific jurisdiction empowers courts to adjudicate claims relating to the defendant's in-forum conduct, and exists when "the suit 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'" *Id*. (quoting *Helicopteros*

---

[3] The Chamber takes no position on the questions presented in this case relating to specific jurisdiction with respect to claims under the Hatch-Waxman Act or on whether defendants are subject to specific personal jurisdiction with respect to those claims.

*Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984); brackets added by the Court).

General jurisdiction, by contrast, permits courts to adjudicate claims against a defendant arising out of actions occurring anywhere in the world.  General jurisdiction exists "where a foreign corporation's 'continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings *entirely distinct from those activities*." *Daimler*, 134 S. Ct. at 754 (quoting *Int'l Shoe Co. of Washington*, 326 U.S. 310, 318 (1945)) (emphasis added).

*Daimler* held that—absent exceptional circumstances—general jurisdiction over a corporation is available only in the company's state of incorporation or principal place of business. That standard is not satisfied here. Rather, the claim is that a court may exercise general personal jurisdiction based on Delaware's requirement that a foreign corporation consent to general jurisdiction in order to obtain authority to do business in Delaware.

Upholding general jurisdiction on that basis would violate all of the policy considerations that the Supreme Court has found relevant to due process analysis in this context. It would prevent corporations from structuring their primary conduct to avoid being subject to suit on any claim in

4

multiple jurisdictions; allow businesses to be haled into forums with which they have only limited contacts; infringe on important international comity principles; and deter cross-border investment. And subjecting the corporation to general jurisdiction is not necessary to vindicate any legitimate interest of the forum state—because specific jurisdiction principles ensure that the state's courts will be available with respect to claims relating to the corporation's conduct in the state.

Settled constitutional principles confirm that compelled consent to general jurisdiction violates due process. *Daimler* itself held that general jurisdiction cannot be based on merely "doing business" in a state. And the unconstitutional conditions doctrine bars Delaware from giving foreign corporations a choice between doing business in the state and forgoing its due process protection against expansive general jurisdiction. Finally, Supreme Court decisions pre-dating *International Shoe* provide no grounds for upholding general jurisdiction based on compelled consent.

## ARGUMENT

**A State May Not Require A Foreign Corporation To Consent To General Personal Jurisdiction Before Permitting The Foreign Corporation To Do Business Within The State.**

*Daimler* held that due process virtually always limits general personal jurisdiction over a corporate defendant to the states of the company's

5

incorporation and principal place of business. 134 S. Ct. at 760. Because general jurisdiction is "all-purpose jurisdiction," "only a limited set of affiliations with a forum" are sufficient to require a defendant to appear and defend suits unrelated to its contacts with the forum; what is required are contacts demonstrating that the defendant "'is fairly regarded as at home'" there. *Id*. Just as an "individual" is at home in his or her "domicile," a corporation is at home in two "paradigm[atic]" forums—its "place of incorporation and principal place of business." *Id*.

The *Daimler* standard is not satisfied here. Defendants are neither incorporated in Delaware nor have their principal places of business in Delaware.

And this is not an "exceptional case" in which "a corporation's operations in a forum other than its formal place of incorporation or principal place of business [are] so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 134 S. Ct. at 761 n.19. That test requires "an appraisal of a corporation's activities in their entirety, nationwide and worldwide" in comparison to its activities in the forum to determine whether the corporation's activities in the forum differ significantly in both kind and quantity from those in the other places in which the corporation does business. *Id*. at 762 n.20. "A corporation that operates

6

in many places can scarcely be deemed at home in all of them"—and the due process standard limits general jurisdiction to a forum in which the corporation is "at home." *Id.* Here, nothing about defendants' Delaware-related activity distinguishes it sufficiently from defendants' activity in other states.[4]

General jurisdiction in this case therefore depends on the theory that defendants "consented" to general jurisdiction because they were required to do so in order to conduct business in Delaware. That "consent" plainly cannot be characterized as voluntary. To the extent Delaware law is properly interpreted to require consent to general jurisdiction—a question we do not address[5]—Delaware is conditioning access to its market on a corporation's relinquishment of its due process protection against exposure

---

[4]    Indeed, the only case that the Court identified as sufficiently "exceptional" to permit the assertion of general jurisdiction by a state in which a corporation was neither incorporated nor had its principal place of business was *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), in which a foreign company moved its headquarters and corporate records to Ohio after its home forum (the Philippines) was occupied by the Japanese army during World War II.  *Daimler*, 134 S. Ct. at 756 & n.8 (citations omitted).  Ohio was its "principal, if temporary, place of business," and was "a surrogate for the place of incorporation or head office." *Id.* (internal quotation marks omitted). That plainly is not true of Delaware for defendants here.

[5]    The Delaware Supreme Court's decision construing the registration statute to require consent to general jurisdiction was rendered prior to the Supreme Court's decision in *Daimler. See Sternberg v. O'Neil*, 550 A.2d 1105 (Del. 1988).

to general personal jurisdiction in states other than the corporation's states of incorporation and principal place of business. The assertion of general jurisdiction based on such compelled "consent" violates due process.

To begin with, permitting general jurisdiction based on coerced consent would subject foreign corporations to the very unfairness and lead to the precise adverse consequences that the due process limits on general jurisdiction are designed to prevent. Given those consequences, it is not surprising that longstanding due process principles bar general jurisdiction based on compelled consent.

### A. General Jurisdiction Based On Coerced Consent Would Produce The Very Unfairness And Other Adverse Consequences That The Supreme Court Sought To Prevent Through Its *Daimler* Ruling.

The Supreme Court has invoked several policy considerations in defining the Constitution's constraints on the exercise of personal jurisdiction. All of those considerations weigh heavily against permitting general jurisdiction based on compelled consent.

*First*, the due process limits on personal jurisdiction confer "'a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Burger*

8

*King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

A corporation's place of incorporation and principal place of business are "affiliations" that "have the virtue of being unique." *Daimler*, 134 S. Ct. at 760. "[T]hat is, each ordinarily indicates only one place"—a forum that is "easily ascertainable." *Id*. That "[p]redictability * * * is valuable to corporations making business and investment decisions." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). This bright-line rule also avoids needless "uncertainty and litigation over the preliminary issue of the forum's competence." *Burnham v. Superior Ct. of California*, 495 U.S. 604, 626 (1990) (plurality opinion).

Permitting general jurisdiction based on compelled consent would prevent corporations from structuring their affairs to limit exposure to general jurisdiction. Every state could enact a statute requiring consent to general jurisdiction, with the result that a corporation could be sued everywhere on any claim arising anywhere in the world. "Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants" to structure their affairs to provide some assurance regarding where a claim might be asserted. *Daimler*, 134 S. Ct. at 761-62. Indeed, a

9

corporation would be completely unable to predict where any particular claim might be asserted.[6]

Allowing general jurisdiction by compelled consent would also greatly facilitate forum-shopping by plaintiffs. Consider a car manufacturer that is registered to do business in Delaware. An Arizona resident who slips and falls during a visit to the manufacturer's headquarters in Michigan (where it is also incorporated) could bring suit in Delaware under the compelled consent theory. Even more outlandishly, a Chinese citizen who claims injury in China from a defective car manufactured and sold in China could sue the manufacturer in Delaware. Any claim against that business, arising from acts occurring anywhere in the world, could be brought in Delaware—or any other state where the manufacturer is compelled to consent to general jurisdiction in order to conduct business.

*Forum non conveniens* principles would not ameliorate this hardship. The corporation would bear the cost and uncertainty of seeking to

---

[6]    The notion that every state might enact a similar compelled consent requirement is not idle speculation. For example, the New York Legislature is currently considering such a measure, which the Association of the Bar of the City of New York is opposing on constitutional grounds. *Report on Legislation – A.6714 and S.4846* (Apr. 2015), *available at* http://www2.nycbar.org/pdf/report/uploads/20072900-OppositiontoBillto-ConsenttoJurisdictionbyForeignBusinessOrganizationsAuthorizedtodoBusinessinNewYork.pdf.

transfer the action to a more appropriate forum—the very costs and uncertainty that limits on general jurisdiction are designed to eliminate.

*Second*, the minimum-contacts requirement "protects [a defendant's] liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp.*, 471 U.S. at 471-72; *see also J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011) (plurality) ("[T]hose who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter.").

The compelled consent theory would subject a company to the jurisdiction of a state's courts with respect to claims having nothing to do with the state—notwithstanding the corporation's lack of meaningful contacts with the state. That result directly undermines the protections conferred by the Due Process Clause.

*Third*, the Court in *Daimler* recognized that litigation may have a "transnational" component, and that an "expansive view of general jurisdiction" may well present "risks to international comity." 134 S. Ct. at 762-63. Appropriately limiting the exercise of personal jurisdiction over foreign entities is an essential element of the respect due to the judicial systems of other nations. Thus the "procedural and substantive interests

11

of other nations in a state court's assertion of jurisdiction over an alien defendant" and "the Federal interest in Government's foreign relations policies" "will be best served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case." *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 115 (1987) (plurality).

The *Daimler* Court observed that "[o]ther nations do not share the uninhibited approach to" general jurisdiction (134 S. Ct. at 763) that had been a feature of the U.S. legal system before the decision in *Daimler*. The Court cited the federal government's *amicus* brief stating that "'foreign governments' objections to some domestic courts' expansive views of general jurisdiction have in the past impeded negotiations of international agreements on the reciprocal recognition and enforcement of judgments.'" *Id.*; *see also* Charles W. Rhodes, *Clarifying General Jurisdiction*, 34 Seton Hall L. Rev. 807, 900 (2004) ("applying the American conception of general jurisdiction" "to disputes without any relationship to the United States" often "is viewed with [abhorrence] by many other nations").[7]

---

[7]    The Chamber made the same point in its *amicus* brief in *Daimler*: "Concern about retaliation against American companies has prompted t[he Supreme Court] to proceed cautiously when permitting the exercise of prescriptive jurisdiction over foreign companies."  Brief for Chamber of Commerce of United States of America et al., in Support of Petitioner at *19, *Daimler*, 134 S. Ct. 746 (No. 11-965), 2013 WL 3421897 (citing, e.g., *Japan*

Allowing states to circumvent *Daimler* through the device of compelled consent would reintroduce the very same "expansive" general jurisdiction that *Daimler* sought to foreclose. And it would present the very same risks to international comity—including the assertion in U.S. courts of claims having nothing to do with the United States.

*Fourth*, *Daimler*'s clear rule regarding general jurisdiction eliminates a potential obstacle to foreign direct investment, a driver of growth vitally important to our economy.

An October 2013 study by the federal government found that foreign direct investment "supports a host of benefits in the United States, notably good jobs and innovation led by research and development investment." *Foreign Direct Investment in the United States* at 11 (Oct. 2013), *available at* https://www.whitehouse.gov/sites/default/files/2013fdi_report_-_final_for_-web.pdf; *see also* Statement by President Obama on US Commitment to Open Investment Policy (June 20, 2011) ("Obama Statement") (foreign direct investment "create[s] well-paid jobs, contribute[s] to eco-

---

*Line, Ltd. v. Los Angeles Cnty.*, 441 U.S. 434, 450 (1979); *McCulloch v. Sociedad Nacional de Marineros de Honduras*, 372 U.S. 10, 17 (1963)). "Those same concerns should animate the rules governing adjudicatory jurisdiction," because "[f]oreign jurisdictional rules are far less likely to reflect a hostile approach toward U.S. companies if our own rules regarding adjudicatory jurisdiction over foreign companies are similarly measured." *Id.* at *19-20.

nomic growth, boost[s] productivity, and support[s] American communities"), *available* *at* https://www.whitehouse.gov/the-press-office/2011/06/20/statement-president-united-states-commitment-open-investment-policy.

The federal government has embarked on a concerted effort to promote increased foreign investment in the United States. *Obama Statement*, *supra*; *see also* Remarks by President Obama at the SelectUSA Investment Summit (Mar. 23, 2015), *available* *at* https://www.whitehouse.gov/the-press-office/2015-/03/23/remarks-president-selectusa-investment-summit. Indeed, the U.S. affiliates of foreign firms in 2012 employed 5.8 million people in the United States, spent $48 billion on U.S. research and development, and exported nearly $344 billion worth of goods manufactured in the United States. Bureau of Economic Affairs, *Foreign Direct Investment in the United States – Preliminary 2012 Data*, *available* *at* http://-www.bea.gov/international/pdf/fdius_2012p/GroupITablesA1toA9.pdf. In 2013, the United States attracted $231 billion in foreign direct investment, up from $170 billion in 2012. *Id.*

If the price of investing in the United States is to subject a business to expansive assertions of general jurisdiction that will permit suits in

U.S. courts on every claim arising anywhere in the world, "[o]verseas firms * * * could be deterred from doing business here." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 164 (2008); *see also Asahi Metal*, 480 U.S. at 114 (recognizing the "unique burdens placed upon one who must defend oneself in a foreign legal system").[8]

*Fifth*, there are no countervailing benefits from imposing these significant costs on corporations and our legal system. In particular, compelling consent to general jurisdiction is not necessary to protect in-state residents. To the contrary: if a nonresident corporation creates meaningful contacts with the forum state and its in-state conduct harms an in-state resident, that corporation may be sued on a specific jurisdiction theory. *See, e.g., Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (observing that a state may "exercise jurisdiction consistent with due process" if "the defendant's suit-related conduct * * * create[s] a substantial connection with the forum State"); *see also Daimler*, 134 S. Ct. at 755 ("'[S]pecific jurisdic-

---

[8]    Indeed, given the uniquely expansive procedural rules governing civil litigation in the United States—including broad discovery; the prospect of large damages awards dwarfing those available in most other countries; contingent-fee representation of plaintiffs; and the virtual prohibition against shifting of litigation costs to a losing plaintiff (*cf. Morrison* v. *National Australia Bank Ltd.*, 561 U.S. 247, 269 (2010))—there is little doubt that foreign enterprises would revamp their operations to avoid subjecting themselves to general jurisdiction in U.S. courts, even if that would require relocating or significantly reducing their U.S. operations.

tion has become the centerpiece of modern jurisdiction theory, while general jurisdiction [has played] a reduced role'") (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2854 (2011)). Compelling consent to general jurisdiction is not necessary to ensure that nonresident corporations may be held accountable for their in-forum conduct.

In sum, all of the policy considerations relevant to the due process inquiry provide strong reasons to reject general jurisdiction based on compelled consent.

## B. General Jurisdiction Based On Compelled Consent Violates Due Process.

The Due Process Clause of the Fourteenth Amendment limits a "court's assertion of jurisdiction," because such an assertion "exposes defendants to the State's coercive power." *Goodyear*, 131 S. Ct. at 2850. *Daimler* makes clear that the Due Process Clause would invalidate a state law subjecting all foreign corporations doing business within a state to general personal jurisdiction. A state may not circumvent that limitation by requiring foreign corporations to consent to general personal jurisdiction as a condition for doing business within the state.

*1.* Daimler *squarely rejected a "doing business" test for general personal jurisdiction.*

The *Daimler* plaintiffs argued that general jurisdiction should be available "in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business.'" 134 S. Ct. at 761. The Supreme Court considered and rejected "[t]hat formulation" of the general-jurisdiction standard as "unacceptably grasping." *Id.* The Court explained that "[g]eneral jurisdiction . . . calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. ***A corporation that operates in many places can scarcely be deemed at home in all of them***." *Id.* at 762 n.20 (emphasis added). Indeed, the Court warned that it is an "obsolescing notion" to confer jurisdiction "based on nothing more than a corporation's 'doing business' in a forum." *Id.* at 756 n.8.

Yet that would be the precise result of upholding general jurisdiction based on compelled consent. If the Due Process Clause permitted *any* state to exercise general jurisdiction based on "consent" in connection with registration to do business, then it would permit every state to do so. The result would be to transform every state and federal court into an all-purpose forum with respect to every corporation registered to do business. A nonresident business that registers in each of the "many places" where

17

it "operates" will "be deemed at home in all of them." *Cf. id.* at 762 n.20. That result is contrary to *Daimler*.

> **2. *Requiring a foreign corporation to consent to general jurisdiction to qualify to do business in the state violates the unconstitutional conditions doctrine.***

Under the doctrine of "unconstitutional conditions," "the government 'may not deny a benefit to a person because he exercises a constitutional right.'" *Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586, 2594 (2013) (citation omitted). The doctrine "vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *Id.* Conditioning a corporation's ability to transact business within a state on the corporation's waiver of its due process right not to be subject to general jurisdiction violates this principle.

The Supreme Court has long recognized that a state may not "require[e] [a] corporation, as a condition precedent to obtaining a permit to do business within [a] State, to surrender a right and privilege secured to it by the Constitution." *Koontz*, 133 S. Ct. at 2596 (quoting *Southern Pac. Co. v. Denton*, 146 U.S. 202, 207 (1892)); *see also id.* at 2594 ("[T]he government may not deny a benefit to a person because he exercises a constitutional right.").

In *Denton*, the Supreme Court invalidated a Texas law that, as a condition of doing business in Texas, barred a company from removing to federal court a suit filed in state court. 146 U.S. at 206-07 (citing Gen. Laws Tex. 1887, pp. 116-17). The statute required a nonresident corporation, in "requesting the issuance to such corporation of a permit to transact business in th[e] state," to stipulate that if it were sued in Texas and sought to remove to federal court, it would "forfeit and render null and void any permit issued or granted to such corporation to transact business in this state." *Id.* at 207 (internal quotation marks omitted). Describing the statute's "attempt to prevent removals" as "vain," the Court concluded that the law "was unconstitutional and void," and that there would be "no validity or effect to any agreement or action of the corporation in obedience to its provisions." *Id.*

That same analysis controls here. As a condition of doing business in the state, Delaware apparently requires nonresident businesses to register and to consent to general jurisdiction. 8 Del. Code § 371; *see Sternberg v. O'Neil*, 550 A.2d 1105, 1116 (Del. 1988) (registration confers consent "to the exercise of general jurisdiction by the Courts of Delaware"). Failing to register bars a company from doing business within the State. When states impose such "penalties for non-registration" (Tanya J. Monestier,

*Registration Statutes, General Jurisdiction, and the Fallacy of Consent*, 36 Cardozo L. Rev. 1343, 1363-66 (2015)), they put companies to the choice of suffering those adverse consequences or forgoing their constitutional rights—here, the due process protection recognized in *Daimler*. Giving effect to "consent" based on that coerced choice is precisely what the unconstitutional conditions doctrine prohibits.

Indeed, if the compelled consent here were effective, states could add numerous other "consents" to their foreign corporation registration statutes. For example:

- "The Due Process and Commerce Clauses forbid the States to tax 'extraterritorial values,'" *MeadWestvaco Corp.* v. *Ill. Dep't of Revenue*, 553 U.S. 16, 19 (2008), but a state could require foreign companies to waive those protections as a prerequisite to being permitted to do business within the state;

- The Due Process Clause requires states to provide pre-attachment process in certain situations, *Connecticut v. Doehr*, 501 U.S. 1, 13-14 (1991), but corporations could be required to waive those protections;

20

- The Seventh Amendment provides a jury trial right in certain cases, *e.g.*, *Tull v. United States*, 481 U.S. 412, 417-18 (1987), but corporations could be required to waive that right.

The unconstitutional conditions doctrine plainly bars general jurisdiction based on Delaware's compelled "consent."

### 3. *The Supreme Court's rulings in* International Shoe *and its progeny repudiated the Court's prior jurisdiction-by-implied consent decision.*

The district court in *Acorda* relied upon *Pennsylvania Fire Insurance Co. v. Gold Issue Mining & Milling Co.*, 243 U.S. 93, 94 (1917), to uphold general jurisdiction based on compelled consent. But *Pennsylvania Fire* provides no support for that result.

*Pennsylvania Fire* involved a Missouri law requiring an insurer to designate the superintendent of the state insurance department as its agent for service of process. 243 U.S. at 94. After an insurer was sued in Missouri for conduct occurring elsewhere, the Missouri state supreme court rejected the argument that the law conferred only specific jurisdiction. In turn, the U.S. Supreme Court reasoned that there was "hardly * * * a constitutional question open" after the Missouri court's decision. *Id.* at 95. It suggested that the designation of the superintendant stood in the place of "a corporate vote" to "accept[] service in [a] specific case." *Id.*

21

The decision in *Pennsylvania Fire* was a product of the "strict territorial approach" to personal jurisdiction that rested on *Pennoyer v. Neff*, 95 U.S. 714 (1877), and was overturned by the "canonical" 1945 decision in *International Shoe. Daimler*, 134 S. Ct. at 754. Under *Pennoyer*, a tribunal's personal jurisdiction "reache[d] no farther than the geographic bounds of the forum." *Id.* at 753. Registration statutes served the then-essential purpose of ensuring that a nonresident company could be served within the state.

With the ruling in *International Shoe*, "'the relationship among the defendant, the forum, and the litigators, rather than the mutually exclusive sovereignty of the States on which the rules of *Pennoyer* rest, became the central concern of the inquiry into personal jurisdiction.'" *Daimler*, 134 S. Ct. at 754. As the *Daimler* Court explained, cases "decided in the era dominated by *Pennoyer*'s territorial thinking * * * should not attract heavy reliance today." *Id.* at 761 n.18.

Indeed, the Supreme Court has consistently rejected pre-*International Shoe* precedents based on outdated concepts of territoriality and implied consent. *See, e.g.*, *Burnham*, 495 U.S. at 617-18 (plurality opinion); *McGee v. International Life Insurance Co.*, 355 U.S. 220, 222-23 (1957). Assertions of personal jurisdiction "must be evaluated according to

22

the standards set forth in *International Shoe* and its progeny" and "[t]o the extent that prior decisions are inconsistent with this standard, they are overruled." *Shaffer v. Heitner*, 433 U.S. 186, 212 & n.39 (1977). A claim of general jurisdiction based on compelled consent fails that test.[9]

## CONCLUSION

The Court should hold that defendants are not subject to general personal jurisdiction.

---

[9]     Of course, a party may *voluntarily* consent to specific jurisdiction in a particular case a variety of ways—such as by entering into a contract with a forum selection clause, *National Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964), or by appearing voluntarily in court, *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982).

Respectfully submitted,

/s/ Andrew J. Pincus
Andrew J. Pincus
Paul W. Hughes
James F. Tierney
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
(202) 263-3000

Kate Comerford Todd
U.S. CHAMBER LITIGATION
    CENTER, INC.
1615 H St., NW
Washington, DC 20062
(202) 463-5337

*Counsel for* Amicus Curiae

Dated: May 26, 2015

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned counsel certifies that this brief:

(i)    complies with the type-volume limitation of Rules 29(d) and 32(a)(7)(B) because it contains 4,770 words, including footnotes and excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii); and

(ii)    complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Office Word 2007 and is set in Century Schoolbook font in a size equivalent to 14 points or larger.

Dated: May 26, 2015                     /s/ Andrew J. Pincus
                                        Andrew J. Pincus

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2015, I served the foregoing Brief of Amicus Curiae the Chamber of Commerce of the United States in Support of Appellants on each party separately represented by the Court's CM/ECF system.


Dated: May 26, 2015                    /s/ Andrew J. Pincus
                                       Andrew J. Pincus